J-S18013-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KAREN YARSUNAS, | |
| Appellant | No. 800 EDA 2014 |

Appeal from the PCRA Order Entered February 27, 2014
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0002637-2010

BEFORE: BENDER, P.J.E., ALLEN, J., and MUNDY, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED MAY 12, 2015**

Appellant, Karen Yarsunas, appeals from the post-conviction court's February 27, 2014 order denying as untimely her petition for relief filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. After careful review, we affirm.

On April 13, 2010, Folcroft Borough police in Delaware County arrested Appellant for drug offenses related to the discovery of several prescription and illicit drugs in her possession.[1]   The Commonwealth subsequently

_____

[1] After initially discovering 2 small baggies of cocaine and 60 Methadone pills in Appellant's possession, police obtained a search warrant and discovered in Appellant's vehicle an additional "311 Methadone pills, 4 oxycontin pills, 50 oxycodone pills, 6 wax bags of heroin in a small match box, 1 bag of cocaine, 3 Seroquel 200 pills, 1 Viagra pill, 2 red straws, 2 empty glassine bags, $350, $120, $20, $82, $1,900 all in separate sections of her wallet, a digital scale, and 2 Cricket cell phones." Trial Court Opinion (TCO), 7/17/14, at 3 n.3.

charged Appellant with possession of, and possession with intent to deliver, a controlled substance, possession of drug paraphernalia, adulteration and misbranding of a controlled substance, failure to use a turn signal, and windshield obstructions. A jury trial was held on March 1, 2011. The jury found Appellant guilty on all drug-related counts. On May 10, 2011, the trial court sentenced Appellant to an aggregate sentence of 5-10 years' incarceration, to be followed by a consecutive term of 2 years' probation.

Appellant filed a timely, counseled notice of appeal on June 6, 2011. This Court affirmed Appellant's judgment of sentence in a memorandum opinion filed on April 10, 2012. *See Commonwealth v. Yarsunas*, 48 A.3d 473 (Pa. Super. 2012) (unpublished memorandum). Appellant did not seek further appellate review at that time.

Appellant filed a timely, *pro se* PCRA petition on May 23, 2012, and the PCRA court appointed PCRA counsel to represent her. Subsequently, counsel filed an amended PCRA petition and, separately, an "Amended Motion for Extraordinary Relief Pursuant to Title 42 Pa.C.S.A. § 9777(a)(2)." At a hearing held on March 5, 2013, the PCRA court granted the motion for extraordinary relief and Appellant (through counsel) withdrew her pending PCRA petition.

On August 5, 2013, Appellant filed a "Motion for Post Trial Relief" in the PCRA court (August 2013 PCRA Petition). The court treated the motion as a PCRA petition and appointed Henry DiBenedetto, Esq., to represent Appellant. On October 29, 2013, Attorney DiBenedetto filed a no-merit

letter and a request to withdraw pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988). His request to withdraw was granted on October 31, 2013. Appellant filed a timely response to the no-merit letter on January 23, 2014. On January 30, 2014, the PCRA court issued a notice of its intent to dismiss Appellant's August 2013 PCRA Petition pursuant to Pa.R.Crim.P. 907. The court formally dismissed the petition as untimely under the PCRA by order dated February 27, 2014.

On March 6, 2014, Appellant filed a timely notice of appeal from the February 27, 2014 PCRA court order dismissing her August 2013 PCRA Petition. Appellant filed a timely Pa.R.A.P. 1925(b) statement, and the PCRA court issued its Rule 1925(a) opinion on July 17, 2014.

Appellant now presents the following questions for our review:

  I.   Is Appellant's sentence illegal and unconstitutional pursuant to **Alleyne v. United States**[, 133 S.Ct. 2151 (2013)]?

  II.  Did the PCRA court err when the court dismissed Appellant's amended petition for post-conviction relief as untimely?

  III. Did the PCRA court err when the court dismissed Appellant's amended petition for post-conviction relief as lacking merit?

Appellant's Brief, at 2 (unnecessary capitalization omitted).

We review Appellant's claims under the following standard:

Our standard of review of an order denying PCRA relief is whether the record supports the PCRA court's determination and whether the PCRA court's decision is free of legal error.

- 3 -

> *Commonwealth v. Phillips*, 31 A.3d 317, 319 (Pa. Super.
> 2011) (citing *Commonwealth v. Berry*, 877 A.2d 479, 482 (Pa.
> Super. 2005)). The PCRA court's findings will not be disturbed
> unless there is no support for the findings in the certified record.
> *Id.* (citing *Commonwealth v. Carr*, 768 A.2d 1164, 1166 (Pa.
> Super. 2001)).
>
> We must first address whether Appellant satisfied the
> timeliness requirements of the PCRA. The timeliness of a PCRA
> petition is a jurisdictional threshold and may not be disregarded
> in order to reach the merits of the claims raised in a PCRA
> petition that is untimely. *Commonwealth v. Murray*, 562 Pa.
> 1, 753 A.2d 201, 203 (2000). Effective January 16, 1996, the
> PCRA was amended to require a petitioner to file any PCRA
> petition within one year of the date the judgment of sentence
> becomes final. 42 Pa.C.S.A. § 9545(b)(1). A judgment of
> sentence "becomes final at the conclusion of direct review,
> including discretionary review in the Supreme Court of the
> United States and the Supreme Court of Pennsylvania, or at the
> expiration of time for seeking the review." 42 Pa.C.S.A. §
> 9545(b)(3). …
>
> However, an untimely petition may be received when the
> petition alleges, and the petitioner proves, that any of the three
> limited exceptions to the time for filing the petition, set forth at
> 42 Pa.C.S.A. § 9545(b)(1)(i), (ii), and (iii), are met. A petition
> invoking one of these exceptions must be filed within sixty days
> of the date the claim could first have been presented. 42
> Pa.C.S.A. § 9545(b)(2). In order to be entitled to the exceptions
> to the PCRA's one-year filing deadline, "the petitioner must plead
> and prove specific facts that demonstrate his claim was raised
> within the sixty-day time frame" under section 9545(b)(2).
> *Carr*, 768 A.2d at 1167.

*Commonwealth v. Lawson*, 90 A.3d 1, 4-5 (Pa. Super. 2014) (footnote

omitted).

In its opinion, the PCRA court found that Appellant's August 2013

PCRA Petition was untimely. *See* TCO, at 11-12. The PCRA court also

determined that Appellant could not rely on any exception to the timeliness

requirements of the PCRA by claiming retroactive application of *Alleyne*

because Appellant did not raise that claim "within 60 days of the date the claim could have been presented." ***See*** TCO, at 13; 42 Pa.C.S. § 9545(b)(2). In any event, the PCRA court also concluded that ***Alleyne*** has not been afforded retroactive effect by the issuing court and, thus, Appellant could not have relied on the PCRA's retroactivity timeliness exception. ***See*** TCO, at 15-16; 42 Pa.C.S. § 9545(b)(1)(iii). Accordingly, the PCRA court lacked jurisdiction to entertain Appellant's August 2013 PCRA petition.[2]

After a thorough review of the record, the briefs, the applicable law, and the thorough, well-reasoned opinion of the PCRA court, we agree that Appellant's August 2013 PCRA Petition is untimely and that no timeliness exception applies. The PCRA court's 24-page opinion adequately addresses Appellant's claim(s) to the contrary. Accordingly, we affirm on the basis of the PCRA court's opinion.

Order ***affirmed***.

_____

[2] Out of an abundance of caution, the PCRA court also addressed the merits of Appellant's claims, concluding that each lacked merit. Because we agree that Appellant's August 2013 PCRA petition was untimely, and that Appellant failed to demonstrate the applicability of any exception to the PCRA's timeliness requirements, we need not review the PCRA court's analysis in this regard.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/12/2015

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA

v.

KAREN YARSUNAS

CP-23-CR-2637-2010
800 EDA 2014

## O P I N I O N

NILON, J.

FILED: 7/17/14

Karen Yarsunas, hereinafter "Appellant" or "Petitioner", has filed an appeal from the Court's Order denying her Post Conviction Relief Act ("PCRA") Petition without a Hearing. For the reasons provided below, the Court submits that the Order denying PCRA relief should be affirmed.

This is an appeal from the Court's Order dated October 29, 2013, denying Appellant PCRA relief. The nature and history of the case are as follows:

### Factual History[1]

#### I. Appellant's Charged Criminal Activity

On April 13, 2010, at approximately 7:30 p.m. Officer Eiserman of the Folcroft Police Department, in an unmarked cruiser, observed the Appellant exit the residence of Craig Phillips on Glen Avenue in Folcroft, Delaware County, Pennsylvania, carrying a yellow shopping bag. (N.T. 3/1/11 p. 128). Appellant then entered her vehicle, and Officer Eiserman observed

---

[1] Taken from Trial Court Opinion pp. 1-4.

SERVICE BY FIRST CLASS MAIL
AND
INTEROFFICE MAIL

Appellant make an illegal "U-turn." (N.T. 3/1/11 p. 129). Officer Eiserman continued to follow the vehicle, and observed Appellant make a left turn without properly using a left turn signal. (N.T. 3/1/11 p. 131). Officer Eiserman then contacted Officer Mackey of the Folcroft Police Department, and requested that Officer Mackey pull the vehicle over for the traffic violations.[2] (N.T. 3/1/11 pp. 131-32). Officer Mackey then put his emergency lights on and initiated a traffic stop of Appellant's vehicle at a gas station parking lot. (N.T. 3/1/11 pp. 133-35). The officers testified that Appellant seemed nervous and kept reaching into her purse and pockets during the stop. (N.T. 3/1/11 pp. 135-36, 238). Appellant continued to put her hands into her purse despite Officer Eiserman's orders, so she was asked to exit the vehicle for officers' safety. (N.T. 3/1/11 pp. 136-37, 240-41).

After a brief conversation, Appellant gave an affirmative response when Officer Eiserman asked her "...if she had any illegal contraband on her or her person..." (N.T. 3/1/11 p.138). Appellant then handed over two pink glassine bags of cocaine, and a cellophane wrapper containing sixty methadone pills. (N.T. 3/1/11 p. 139-140). Officer Eiserman also testified that Appellant's purse visibly contained large quantities of U.S. currency. (N.T. 3/1/11 p. 29).

Appellant was then arrested and read her *Miranda* rights. (N.T. 3/1/11 pp. 142-44). After she was placed in the police cruiser Appellant then told the Officers that "she had 400 more methadone pills in her vehicle. And that we could take everything if we just let her go." (N.T. 3/1/11 pp. 142-43). Officer Eiserman also testified that Appellant told him she was at Craig Phillips' residence "to sell Craig Phillips pills." (N.T. 3/1/11 p. 144). At that point, the vehicle was secured and brought back to police headquarters, where it was searched pursuant to a search

---

[2] Officer Eiserman requested the aid of backup because his vehicle was not equipped with emergency lights. (N.T. 3/1/11 p. 132).

2

warrant. (N.T. 3/1/11 pp.145-48). Upon executing the search warrant additional contraband was recovered.[3] At police headquarters, the Appellant stated to Officer Eiserman that she had just delivered prescription pills to Craig Phillips at the Glen Avenue residence, which she did in exchange for cocaine and/or money. (N.T. 3/1/11 p. 145).

## II. Appellant's Uncharged Misconduct:

Craig Phillips provided testimony under Pa.R.E. 404(b) with regard to the history of drug transactions that had taken place between Appellant and himself, prior to Appellant's April 13, 2010 arrest.[4] Mr. Phillips testified "I met her [Appellant] through her boyfriend, Steve. ...And we got involved with a couple of business opportunities." (N.T. 3/2/11 p. 34). In response to the attorney for the Commonwealth's question: "What do you mean by business opportunities?" Mr. Phillips answered: "Drugs." (N.T. 3/2/11 p. 34). Mr. Phillips then testified that he and Appellant began a relationship in which Appellant would deliver prescription pills to Mr. Phillips, he would then sell them, and she would return to collect the money and provide him with more pills. (N.T. 3/2/11 pp. 37-42). Mr. Phillips testified that the relationship lasted for approximately six months prior to the Appellant's arrest on April 13, 2010.[5] (N.T. 3/2/11 pp. 36, 38-39).

## Procedural History

The Appellant, Karen Yarsunas, was arrested and charged on April 13, 2010, by Police Officers Eiserman and Mackey in Folcroft, Delaware County, Pennsylvania. The Appellant was

---

[3] The evidence seized as a result of the search warrant included: 311 Methadone pills, 4 oxycontin pills, 50 oxycodone pills, 6 wax bags of heroin in a small match box, 1 bag of cocaine, 3 Seroquel 200 pills, 1 Viagra pill, 2 red straws, 2 empty glassine bags, $350, $120, $20, $82, $1,900 all in separate sections of her wallet, a digital scale, and 2 Cricket cell phones. (Admitted into evidence as Exhibits C-1 through C-18).

[4] Prior to trial, the Court held a hearing relating to all Rule 404(b) evidence proffered by the Commonwealth and found the evidence admissible. (N.T. 2/28/11 pp. 3-12).

[5] The prior sales were from November 2009 through April 2010.

3

charged with: Possession With Intent to Deliver a Controlled Substance[6], Possession of a Controlled Substance[7], Possession of Drug Paraphernalia[8], Adulteration and Misbranding of a Controlled Substance[9], Failure to Signal Turn[10], and Windshield Obstructions.[11]

On March 1, 2011, a Jury Trial commenced. On March 3, 2011, the Jury found Appellant Guilty of all charges: Information A, Possession With Intent to Deliver a Controlled Substance[12] (Methadone, Oxycontin); Information C, Possession of a Controlled Substance[13] (Cocaine, Heroin, Methadone, Oxycontin); and Information D, Possession of Drug Paraphernalia.[14] Prior to sentencing, the Court ordered a Pre-Sentence Investigation, as well as a Psychological Evaluation, and a Drug and Alcohol Evaluation.

On May 10, 2011, Appellant was sentenced as follows: Information A (A1 and A2 consolidated), 60 months to 120 months SCI; Information C1, one year probation consecutive to Information A; Information C2, one year probation consecutive to Information A (the sentences for C1 and C2 to run concurrently with each other); Information D, one year probation to run consecutively to A and C. The aggregate sentence was 60 to 120 months SCI followed by a two year term of probation.

On June 6, 2011, appellate counsel filed a timely Notice of Appeal. This trial court's Judgment of Sentence was upheld by the Superior Court in a Memorandum Opinion filed April

---

[6] 35 Pa.C.S. § 780-113(a)(30).
[7] 35 Pa.C.S. § 780-113(a)(16).
[8] 35 Pa.C.S. § 780-113(a)(32).
[9] 35 Pa.C.S. § 780-113(a)(2).
[10] 75 Pa.C.S. § 3334(b).
[11] 75 Pa.C.S. § 4524(c).
[12] 35 Pa.C.S. § 780-113(a)(30).
[13] 35 Pa.C.S. § 780-113(a)(16).
[14] 35 Pa.C.S. § 780-113(a)(32).

4

10, 2012. [Pa. Super. No. 1505 EDA 2011]. No Petition for Allowance of Appeal to the Supreme Court of Pennsylvania was filed.

On May 23, 2012, Appellant filed a timely *pro se* PCRA, and Steven Molineux, Esquire was appointed to represent her on a first, counseled PCRA. After several extensions were granted, Mr. Molineux filed an "Amended Post-Conviction Relief Act Petition" and also filed an "Amended Motion for Extraordinary Relief Pursuant to Title 42 Pa. C.S.A. § 9777(a)(2)", regarding transfer of inmates in need of medical treatment.

On March 5, 2013, a Hearing was held and Appellant's claim for Extraordinary Relief was granted. Appellant's relief was based upon her request to transfer from prison to hospice care at her father's home. The Appellant advised the Court and provided a medical report which established that she was suffering from metastic lung cancer and had less than six months to live.[15] (N.T. 3/5/13 pp. 7-9). At the conclusion of this Hearing, the Appellant then officially **withdrew the PCRA.**

The record reveals the following formal withdrawal of the PCRA Petition, since the court granted the "Motion for Extraordinary Relief". The counseled withdrawal of the PCRA reads as follows:

Q. THE COURT:
All right. Now, Mr. Molineux, you have an application with regard to the PCRA Petition.

MR. MOLINEUX:
I do, at this time, Your Honor, based on your Order and the Petition for Extraordinary Relief, and receiving **written confirmation that I've been**

---

[15] The Court notes that this was an incorrect diagnosis.

5

authorized to do so by my client, Karen Yarsunas, I'll withdraw the Amended Petition, PCRA Petition, sir.

...

Q. THE COURT:
And if you'll mark it withdrawn, and sign it, we will make it [the Amended PCRA Petition] part of the record.

MR. MOLINEUX:
Certainly.

Q. THE COURT:
And, obviously, that's without prejudice to your right to re-file, subject to the time limitations, in the event that Ms. Yarsunas is returned to Muncy."

(N.T 3/5/13 pp. 21-23) (emphasis added).

On August 5, 2013, Appellant filed her second PCRA. Subsequently, Henry DiBenedetto Forrest, Esquire, was appointed by the Court as PCRA counsel for Appellant. Mr. Forrest, Esquire filed a "No Merit" letter and an application to withdraw pursuant to Pennsylvania v. Finley, 481 U.S. 551 (1987), and Commonwealth v. Turner, 544 A.2d 927 (Pa. 1988).

On October 31, 2013, the Court signed an Order granting the withdrawal of Mr. DiBenedetto Forrest, Esquire as counsel for Appellant. Appellant was granted additional time to file a *pro se* Response to the Notice of Intent to Dismiss. On February 18, 2014, Appellant responded to the Notice of Intent to Dismiss. On February 27, 2014, the undersigned dismissed Appellant's PCRA Petition without an evidentiary hearing.

On March, 6, 2014, new appellate counsel, Brian Zeiger, Esquire, filed a timely Notice of Appeal. Consequently, on March 7, 2014, Pursuant to Pa. R.A.P. 1925(b), the Court ordered Appellant to file a Concise Statement of Errors Complained of on Appeal. After Appellant was

granted numerous extensions, she finally filed a "Preliminary Statement of Matters Complained of On Appeal" on or about June 10, 2014, raising the following issues for appellate review:

1. Did the PCRA court err when it dismissed the Appellant's Petition because she raised a meritorious claim that the mandatory minimum sentence she received is illegal and unconstitutional? [Discussion omitted]

2. Did the PCRA court err when it dismissed the Appellant's Petition because she received ineffective assistance of counsel at her suppression hearing?

3. Did the PCRA court err when it dismissed the Appellant's Petition because she received ineffective assistance of counsel when trial counsel failed to motion for a *Carroll* hearing?

4. Did the PCRA court err when it dismissed the Appellant's Petition because she received ineffective assistance of counsel when trial counsel failed to call an expert on behalf of Appellant to testify about personal use of prescription of narcotics?

5. Did the PCRA court err when it dismissed the Appellant's Petition because she received ineffective assistance of counsel when her counsel advised her during the plea bargaining process that the mandatory minimum applicable to her case was 3 years rather than the 5 year mandatory minimum which was actually invoked and imposed?

6. Did the PCRA court err when it dismissed the Appellant's Petition because there was merit to Appellant's prosecutorial misconduct claim concerning the plea agreement made between Craig Phillips and the Commonwealth?

On July 1, 2014, the Appellant filed a last minute "Reply to Commonwealth's Response to Appellant's Preliminary Statement of Matters Complained Of On Appeal". In this Reply, Appellant argues that the Commonwealth's recitation of the facts contains a, "significant error and significant omission." Appellant contends that the Commonwealth improperly mischaracterized her "Amended Motion for Extraordinary Relief Pursuant to Title 42 Pa. C.S.A. § 9777(a)(2)" as "another amended PCRA petition." The Appellant further claims that the Commonwealth failed to acknowledge that the Honorable Judge James J. Nilon Jr. dealt precisely with the "ongoing" PCRA petition on March 5, 2013 when he granted the "Motion for Extraordinary Relief." The Appellant claims that these arguments prove the re-filed and

7

amended PCRA Petition submitted in August of 2013 was a continuation of the original PCRA Petition, and therefore all of the claims therein were made in a timely manner.

## Discussion

The issues raised by Appellant in her PCRA Petition are without merit and the petition was properly dismissed without a hearing. The PCRA Petition was dismissed without a Hearing because a thorough review of the pleadings and the record shows there are no genuine issues concerning any material fact, and no purpose would be served by further proceedings. Pa.R.Crim.P. 907. The standard of review of a PCRA court's dismissal of a PCRA Petition is limited to a determination of whether the PCRA court's conclusion is supported by the evidence of record and free of legal error. Commonwealth v. Boyer, 962 A.2d 1213, 1214 (Pa. Super 2008).

The law presumes counsel has rendered effective assistance. Commonwealth v. Gonzalez, 858 A2.d 1219, 1222 (Pa. Super. 2004), appeal denied, 871 A.2d 189 (Pa. 2005). The reasonableness of counsel's decision cannot be based on a distorted hindsight review. Commonwealth v. Saranchak, 866 A.2d 292, 304 (Pa. 2005).

The PCRA precludes relief for claims that have been previously litigated on direct appeal. 42 Pa.C.S. §9543(a)(3), 9544. The PCRA cannot be used to raise a previously litigated claim under the guise of ineffective assistance of counsel or by presenting new theories of relief to support previously litigated claims. Commonwealth v. Christy, 656 A.2d 877, 881 (Pa. 1995). A claim is previously litigated for PCRA purposes where the "highest appellate Court in which the Petitioner could have had review as a matter of right has ruled on the merits of the issue or it

8

has been raised and decided in a proceeding collaterally attacking the conviction or sentence." 42 Pa. C.S. §9544(a)(3).

To be eligible for relief when asserting a claim for ineffective assistance of counsel, the Petitioner must plead and prove by a preponderance of the evidence that his conviction resulted from:

1) a violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place; or
2) ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.
42 Pa.C.S. §9543(a)(2).

Petitioner must prove: (1) that the claim is of arguable merit, (2) that counsel had no reasonable strategic basis for his action or inaction, and (3) prejudice, i.e., "but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." Commonwealth v. Kimball, 724 A.2d 326, 333 (Pa. 1999). The failure to satisfy any prong of Kimball's three-part test will cause the claim to fail. Gonzalez, 858 A.2d at 1222 (Pa. Super. 2004).

The threshold inquiry in ineffectiveness claims is whether the basis for counsel's action or inaction which forms the basis for the ineffectiveness claim is of arguable merit. Commonwealth v. Pierce, 645 A.2d 189, 194 (Pa. 1994). Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim. Commonwealth v. Poplawski, 852 A.2d 323, 327 (Pa. Super. 2004). Once the threshold inquiry is met, the "reasonable basis" test is used to "determine whether counsel's chosen course was designed to effectuate his client's interest. If

9

we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective." Commonwealth v. Pierce, 645 A.2d 189, 194-95 (Pa. 1994).

The petitioner bears the burden during PCRA proceedings of proving all elements of ineffective assistance, including prejudice. Commonwealth v. Spotz, 870 A.2d 822, 834 (Pa. 2005). The test for prejudice at the PCRA stage is more exacting than the harmless error standard applied on direct appeal. Id. PCRA counsel is not required to perform a broad extra-record investigation where the record belies the petitioner's factual allegations, the petitioner offers no facts to support his claim, and counsel is therefore able to conclude that the issues petitioner seeks to raise have no merit. See, Commonwealth v. Porter, 728 A.2d 890 (Pa. 1999).

In order for PCRA counsel to withdraw, a request to withdraw must be accompanied by a "no merit" letter, which details the nature and extent of PCRA counsel's review, lists each issue a petitioner wished to have reviewed, and explains why a petitioner's issues are meritless. In the case *sub judice*, the Court determined that PCRA counsel's Finley "no merit" letter was issued in compliance with the provisions set forth in Pennsylvania v. Finley, 481 U.S. 551 (1987), and Commonwealth v. Turner, 544 A.2d 927 (Pa. 1988). In Finley, the United States Supreme Court held that a PCRA Petitioner is entitled to an independent review of the record by competent counsel. Finley, 481 U.S. 551. The independent review was described more fully by the Pennsylvania Superior Court in Turner, wherein the court opined that counsel had to present a "no merit" letter detailing the nature and extent of counsel's review and listing each issue a petitioner wished to have raised and explaining why the issues were meritless. Commonwealth v. Turner, 479 A.2d 568, 569-570 (Pa. Super. 1984).

10

This Court conducted its own independent review of the record and agreed with counsel that the petition was meritless. See, Turner, 544 A.2d at 928.

In PCRA Counsel's "Preliminary Statement of Matters Complained of on Appeal Pursuant to Pa. R.A.P. 1925 (b)", PCRA Counsel set forth the aforementioned issues Petitioner wished to raise in her PCRA petition (see above in Procedural History).

## THE APPELLANT'S PCRA PETITION WAS NOT TIMELY.

A judgment of sentence becomes final at the conclusion of direct review or at the expiration of the time for seeking such review. 42 Pa. C.S. § 9545(b)(3); Commonwealth v. Lark, 746 A.2d 585, 587 (Pa. 2000). The Supreme Court of Pennsylvania has repeatedly stated that the PCRA timeliness requirements are jurisdictional in nature and, accordingly, a PCRA court cannot hear untimely PCRA petitions. See, e.g., Commonwealth v. Murray, 753 A.2d 201 (Pa. 2000)[16]; Commonwealth v. Fahy, 737 A.2d 214 (Pa. 1999).[17] The Appellant should be granted no reprieve as she is time-barred from pursuing relief under the PCRA.

In 1996, the Legislature enacted amendments to the PCRA, "which mandate that all petitions for post-conviction relief, including second and subsequent petitions, be filed within one year of the date upon which the judgment became final, unless one of three enumerated exceptions apply." Commonwealth v. Lark, at 587. See also, 42 Pa.C.S. § 9545(b)(1); Commonwealth v. Peterkin, 722 A.2d 638 (Pa. 1998). The Supreme Court of Pennsylvania has described these exceptions as follows:

---

[16] The Court ruled that, "Given the fact that the PCRA's timeliness requirements are mandatory and jurisdictional in nature, no court may properly disregard or alter them in order to reach the merits of the claims raised in a PCRA petition that is filed in an untimely manner."

[17] The Court provided its position on PCRA timeliness, holding, "[T]hat where a petitioner fails to satisfy the PCRA time requirements, this Court has no jurisdiction to entertain the petition."

11

"[Petitioner] must show that her failure to raise these claims previously was the result of illegal interference by government officials, or that facts upon which her claims rest were unknown and could not have been ascertained with due diligence, or that she is asserting a newly recognized constitutional right, and that the petition raising these claims was filed within 60 days of the date the claim could have been presented." Commonwealth v. Crawley, 739 A.2d 108 (Pa. 1999) (citing 42 Pa.C.S. § 9545(b) throughout).

Appellant filed a timely direct appeal to the Superior Court. This trial court's decision was upheld by the Superior Court on April 10, 2012, and her Judgment of Sentence became final 30 days thereafter, or on May 10, 2012.[18] Therefore, the Appellant was required to file a PCRA Petition within one year of May 10, 2012, or by May 10, 2013. Appellant filed her first *pro se* PCRA on May 23, 2012 which was timely on its face. However, on March 5, 2013, a Hearing on Appellant's PCRA and Motion for Extraordinary Relief ensued, where the Appellant successfully obtained relief due to her deteriorated medical condition. The Appellant officially withdrew the PCRA. The Court stated the withdrawal, "...obviously [is] without prejudice to your right to re-file, **subject to the time limitations**, in the event that Ms. Yarsunas is returned to Muncy." (emphasis added) (N.T 3/5/13 pp. 21-23). The Appellant's second PCRA Petition was filed August 5, 2013, approximately three months late, which is beyond the statutory time requirements for filing a PCRA.

Appellant failed to provide any basis recognized by statute that would excuse the untimely filing of this Petition. Because this Petition was not filed in a timely manner, this Court does not have the jurisdiction to entertain any of the claims that Appellant raised. Appellant had the opportunity to file a timely PCRA but she failed to do so, and this Court properly denied her request for relief without a hearing.

---

[18] There was no appeal to the Pennsylvania Supreme Court.

12

1) THE CLAIM THAT THE MANDATORY MINIMUM SENTENCE APPELLANT RECEIVED IS ILLEGAL AND UNCONSTITUTIONAL WAS NOT SUBMITTED TO THE COURT IN A TIMELY MANNER, WAS NOT PRESERVED FOR APPELLATE REVIEW, AND IS WITHOUT MERIT.

a) The Appellant was on notice that the *Alleyne* opinion was published by the Supreme Court; however she failed to raise the argument in a timely manner.

Appellant asserts that the PCRA court erred when it dismissed the Appellant's Petition because she raised a meritorious claim that the mandatory minimum sentence she received was illegal and unconstitutional. The Appellant bases this assertion on the United States Supreme Court holding in Alleyne v. United States, 133 S. Ct. 2151, 186 L.Ed.2d 314 (2013). The Court held that any fact that increases the mandatory minimum sentence for a crime is an "element" of the crime, not a "sentencing factor," that must be submitted to the jury. Alleyne v. United States, 133 S. Ct. at 2155. The Superior Court has provided that "[w]ith regard to an after-recognized constitutional right, the sixty-day period begins to run upon the date of the underlying judicial decision." Commonwealth v. Boyd, 923 A.2d 513, 517 (Pa. Super. 2007).

Therefore, as Alleyne was decided on June 17, 2013, Appellant was required to file her PCRA petition on or before August 17, 2013 to invoke her claim within 60 days of the date the claim first could have been presented. The Superior Court has held that a petitioner's ignorance of the law does not excuse her failure to file a PCRA petition within sixty days of the filing of the judicial decision which she claims established an after-recognized constitutional right. Commonwealth v. Baldwin, 789 A.2d 728, 731 (Pa. Super. 2001). The Appellant may have filed a timely *pro se* PCRA on August 5, 2013; however, the newly found constitutional argument Alleyne presented is not contained anywhere within that Petition. In fact, Alleyne was not even discussed in any documents furnished by the Appellant until the June 11, 2014 1925(b)

13

Statement filed on behalf of the Appellant by Mr. Zeiger, Esquire. The Appellant had 60 days to present a new constitutional argument based upon the holding in Alleyne. The Appellant failed to do so in a timely manner, therefore, the argument cannot be raised.

> b) **Appellant waived her right to raise the argument afforded by *Alleyne*, because she did not raise the issue in the trial court, or her *pro se* PCRA.**

When the Alleyne opinion was issued by the Supreme Court, the Appellant was on notice that she potentially had a new argument to assert. The Appellant failed to do so, by not mentioning Alleyne in her *pro se* PCRA, or any other document furnished to this Court. Constitutional arguments are not immune to waiver on appeal, and will be waived if not raised in the lower court. The Pennsylvania Supreme Court has held that constitutional issues, even sentencing issues based on the Constitution, are waived if not properly raised in the trial court. Commonwealth v. Walton, 397 A.2d 1179, 1185 (Pa. 1979) (due process attack on restitution statute waived where not presented to sentencing court).

The requirement that constitutional sentencing issues be timely raised is merely an extension of the general rule that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). In fact, this rule requiring that issues be raised first in the trial court takes on added significance when someone attacks the constitutionality of a statute, because an appellate court should not rule on the constitutionality of a statute unless absolutely necessary to decide the case before it. Commonwealth v. Cacek, 517 A.2d 992, 993 (1986). The Appellant failed to raise the issue of Alleyne in her PCRA, and therefore should not have the available option of raising such a defense for the first time in a subsequent appeal.

14

c) *Alleyne* has not been held to apply retroactively to cases on collateral review.

Assuming *arguendo*, that Appellant had timely filed her Petition and had preserved the issue for appellate review, she still has not established that the Alleyne decision applies retroactively to cases on collateral review. With respect to the timeliness exception found in Subsection 9545(b)(1)(iii), the Supreme Court has noted two requirements: (1) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or this court after the time provided in this section, and (2) the right "has been held' by that court to apply retroactively. Thus, a petitioner must prove that there is a new constitutional right and that the right "has been held" by that court to apply retroactively. Commonwealth v. Copenhefer, 941 A.2d 646, 649 (Pa. 2007) (citing Commonwealth v. Abdul-Salaam, 812 A.2d 497 (Pa. 2002)).

In the case of Alleyne, the Pennsylvania Supreme Court has yet to rule on the retroactivity of its holding. At the federal level, however, this matter has been decided explicitly within the Third Circuit Court of Appeals. The Third Circuit has ruled that Alleyne cannot apply retroactively to cases on collateral review. See, United States v. Winkelman, 746 F.3d 134 (3d Cir. 2014). Further, The United States Supreme Court has ruled generally on the retroactivity of holdings in the past. They have held that a new rule is not made retroactive to cases on collateral review unless the Court holds it to be retroactive. Tyler v. Cain, 533 U.S. 656, 663 (2001). The Supreme Court announced the Alleyne rule on a direct appeal without expressly holding it to be retroactive to cases on collateral review. See generally, Alleyne, 133 S. Ct. 2151 (2013). The clearest instance in which the Supreme Court can be said to have made a new rule retroactive is where it has expressly held the new rule to be retroactive in a case of collateral review and applied the rule to that case. Tyler v. Cain, 533 U.S. 656, 663 (2001). To this point, the

15

Pennsylvania Supreme Court has not yet expressly held that Alleyne will apply retroactively to cases on collateral review; therefore, the Appellant's argument is without merit because Alleyne cannot apply to her case.

### 2) THE CLAIM THAT APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL AT HER SUPPRESSION HEARING WAS NOT STATED WITH SPECIFITY IN HER 1925(b) AND ALSO WAS PREVIOUSLY LITIGATED ON DIRECT APPEAL, THEREFORE IT IS WITHOUT MERIT.

To merit relief based on an ineffectiveness claim under the PCRA, a petitioner must show that such ineffectiveness 'in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. §9543(a)(2)(ii). We have interpreted this standard to require a petitioner to prove that: (1) the underlying claim is of arguable merit; (2) counsel's performance lacked a reasonable basis; and (3) the ineffectiveness of counsel caused the petitioner prejudice. To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's error or omission, the result of the proceeding would have been different. A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding." Commonwealth v. Cook, 952 A.2d 594, 613-14 (2008).

#### a) The Appellant has failed to plead her claim with specificity and clarity.

Rule 720 Section (B)(1)(a) states the Appellant in a court case shall have the right to make a post-sentence motion. All requests for relief from the trial court shall be stated with specificity and particularity. Pa.R.Crim.P. 720(B)(1)(a). In practical application, this means the appellate courts "will not consider abstract allegations of ineffectiveness; a specific factual predicate must be identified to demonstrate how a different course of action by trial counsel

would have better served [the petitioner]'s interest." Commonwealth v. Cook, 952 A.2d 594, 614 (2008). "A failure to satisfy any one of the three prongs of the test for ineffectiveness requires rejection of the claim." Id. In addition, according to Rule 1925 of Pennsylvania Rules of Appellate Procedure, "[t]he Statement shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge. The judge shall not require the citation to authorities; however, appellant may choose to include pertinent authorities in the Statement." Pa.R.A.P. 1925(B)(4)(ii).

Appellant's claim that trial counsel was ineffective at the suppression hearing fails on appeal because it is abstract. There was no alleged error identified by the Appellant. The claim does not assert any specific, factual predicate to demonstrate how a different course of action by counsel would have led to a different result. Appellant cannot show that counsel's actions or inactions prejudiced her, and her amended petition therefore fails the third prong of the test for ineffectiveness of counsel, and should be dismissed for that reason.

### b) Appellant's claims concerning the Suppression Motion have already been litigated.

An issue is previously litigated if the highest appellate court in which the petitioner could have had review as a matter of right, the Superior Court in this case, has ruled on the merits of the issue. 42 Pa.C.S. §§ 9543(a), 9544(a)(2). Issues litigated on direct appeal from conviction cannot be relitigated in post-conviction proceedings. Com. v. Szuchon, 633 A.2d 1098, 1099 (Pa. 1993). The PCRA cannot be used to raise a previously litigated claim under the guise of ineffective assistance of counsel or by presenting new theories of relief to support previously litigated claims. Commonwealth v. Christy, 656 A.2d 877, 881 (Pa. 1995).

17

In the case *sub judice*, the Appellant has already raised in her direct appeal the issue of Court error in denying her Suppression Motion. Commonwealth v. Yarsunas, 1505 EDA 2011. See "Concise Statement of Matters Complained of on Appeal" filed in direct appeal at Issue 1: "The Honorable Trial Court erred by refusing to grant the Suppression motion filed by Appellant Yarsunas on the grounds therein asserted and based upon the evidence and legal argument presented at the Suppression Hearing held on September 9, 2010". The Superior Court specifically addressed the Appellant's claim of error at the Suppression Hearing: "[b]y failing to include explicit statements indicating how the trial court allegedly erred in its determination, Yarsunas did not specifically identify the issue she sought to raise, and therefore waived it." Commonwealth v. Yarsunas, 1505 EDA 2011 p. 4 (emphasis added).

3) **APPELANT'S CLAIM THAT SHE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN TRIAL COUNSEL FAILED TO MOTION FOR A *CARROLL* HEARING IS WITHOUT MERIT BECAUSE THOSE FACTS WERE ASCERTAINED DURING THE COURSE OF THE TRIAL.**

In Pennsylvania, persons facing mandatory minimum drug sale penalties can bring a *Carroll* motion. This motion stems from Commonwealth v. Carroll, 651 A.2d 171 (Pa. Super. 1994). During a *Carroll* hearing, the sentencing judge receives evidence from both parties in order to determine the weight of the drugs possessed and whether or not the drugs were intended for personal use or distribution. The Appellant claims that trial counsel was ineffective for failing to file a motion requesting a *Carroll* hearing. However, the weight of the drugs Appellant was found in possession of was a fact that was determined during the course of the trial after a stipulation was agreed upon by the Commonwealth and defense counsel. (N.T. 5/10/2011 pp. 22-23). This stipulation was again agreed to by defense counsel at the sentencing hearing, and no

18

issue as to the weight of the drugs recovered by police was further raised by counsel. (N.T. 5/10/2011 p. 23).

Moreover, Detective John Newell testified on behalf of the Commonwealth as an expert. He stated that after reviewing: the quantity of narcotics, the way they were packaged, and cash that was recovered from the Appellant's vehicle; the drugs were intended for distribution purposes and not personal consumption. (N.T. 3/2/11 p. 118). A *Carroll* hearing was not needed and would have been a waste of the trial court's time. To reiterate, counsel cannot be found ineffective for failing to pursue a baseless or meritless claim. Commonwealth v. Poplawski, 852 A.2d 323, 327 (Pa. Super. 2004). Since the Hearing would have had little effect on the defense, it cannot be maintained that the Appellant's case was prejudiced by counsel's failure to take steps which would have been fruitless and any error in counsel's representation must be deemed trivial. Commonwealth v. Rainey, 422 A.2d 652, 655 (Pa. Super. 1980). The Appellant's claim is therefore meritless on review.

### 4) APPELLANT'S CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL WHERE TRIAL COUNSEL FAILED TO CALL AN EXPERT TO TESTIFY ABOUT APPELLANT'S PERSONAL USE OF PRESCRIPTION NARCOTICS IS WITHOUT MERIT.

It has long been the law that an Appellant is entitled to a fair trial, but not a perfect one. Commonwealth v. Hill, 301 A.2d 587, 590 (Pa. 1973) (citing Lutwak v. United States, 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593 (1953)). The reasonableness of counsel's decision cannot be based on a distorted hindsight review. Commonwealth v. Saranchak, 866 A.2d 292, 304 (Pa. 2005). If the court concludes that the particular course chosen by counsel had some reasonable basis, the inquiry ceases and counsel's assistance is deemed effective." Commonwealth v. Pierce, 645 A.2d 189, 194-95 (Pa. 1994).

19

Here, Counsel for Appellant did not state reasons for not calling an expert witness on behalf of his client to testify to her personal use of prescription narcotics. That does not mean that he did not have a reasonable basis for doing so. Neither counsel's strategy, nor his thoughts were placed on the record; however the law presumes counsel has rendered effective assistance. Commonwealth v. Gonzalez, 858 A.2d 1219, 1222 (Pa. Super. 2004), *appeal denied*, 871 A.2d 189 (Pa. 2005). The Appellant was found with almost 400 narcotic pills, with a street value of $4,000 to $8000, which were packaged in a way that indicated they were intended for distribution.[19] It would have been difficult for counsel to obtain an expert to testify that such an excessive quantity of narcotics was for personal use. It was therefore, presumably a valid trial strategy for counsel to not call an expert to testify on the Appellant's behalf about personal consumption of the narcotics.

In addition, Counsel's assistance could not have been deemed ineffective when he doggedly cross-examined the expert that the Commonwealth placed on the stand to testify. Counsel persistently called the expert's opinion into question, attacking his determination that the drugs were intended for distribution. (N.T. 3/2/11 pp. 131-165). Whatever counsel's reasoning or strategy behind not calling an expert witness of his own to testify on behalf of the Appellant's prescription narcotic use, it cannot be deemed ineffectiveness of counsel just because it was not the winning defense. Therefore, this claim is also meritless.

---

[19] Detective Newell, the Commonwealth's expert, testified that the pills were recovered in unlabeled pill bottles, as well as sandwich and cellophane wrapping, a technique indicative of street distribution techniques. He also provided the street value of such a quantity of narcotics. (N.T. 3/2/11 pp. 122-25).

5) <u>THE CLAIM OF INEFFECTIVENESS OF COUNSEL FOR FAILURE TO INFORM APPELLANT OF THE CORRECT MANDATORY MINIMUM DURING THE PLEA BARGAINING PROCESS BEFORE GOING TO TRIAL IS MERITLESS BECAUSE SHE WAS AWARE OF THE FIVE-YEAR MANDATORY MINIMUM SENTENCE BEFORE GOING TO TRIAL.</u>

Appellant claims that she was not made aware of the five-year mandatory minimum sentence if she went to trial and was found guilty. This claim is contrary to testimony given by Appellant's counsel at the sentencing hearing, and therefore is a meritless claim. The Commonwealth asserted at sentencing, "We informed the Court that if she did go to trial and was found guilty we would invoke the **five-year** mandatory minimum, and I believe defense counsel will agree in a letter dated March 23, 2011, we put them on notice of our intent to do so." (N.T. 5/10/2011 p. 21). Defense counsel conceded at the sentencing hearing that the Appellant received prior notice of the Commonwealth's intention to invoke the five-year mandatory minimum.

Mr. Coyne:

We did receive notice from the Commonwealth, I don't remember the exact date, of their intention to seek the mandatory minimum in this matter.

THE COURT:

Okay. There's no question that the minimum mandatory applies and that the defense received the appropriate notice?

Mr. Coyne:

No, Your Honor.

(N.T. 5/10/2011 p. 22).

This establishes that Appellant was on notice of the five-year mandatory minimum before she chose to forego plea bargaining and exercise her right to have a trial on the merits. Appellant's

21

claim cannot be deemed to be more than a baseless attempt to find ineffective assistance of counsel where there was no error.

### 6) APPELLANT'S PROSECUTORIAL MISCONDUCT CLAIM IN REGARDS TO A PLEA DEAL GIVEN TO CRAIG PHILLIPS IS AN ISSUE THAT HAS BEEN WAIVED, AND THEREFORE HAS NO MERIT.

Appellant is raising this issue for the first time. The counseled Amended PCRA Petition that was filed by Mr. Molineux, Esquire on February 20, 2013 did not raise this issue. Thereafter, at the PCRA Hearing, Appellant withdrew her first PCRA. As a result, Appellant has not timely raised the issue of prosecutorial misconduct and it is therefore waived. (See timeliness discussion *supra*). See also, Commonwealth v. Wallace, 724 A.2d 916, 921 (Pa. 1999) (holding that issues not raised in PCRA petition cannot be considered for first time on appeal). Appellant failed to preserve this issue for appellate review as she did not raise the issue with the PCRA Court.

### 7) APPELLANT'S CLAIM THAT THE PCRA FILING SUBMITTED IN AUGUST OF 2013 WAS AN AMENDMENT TO THE ORIGINAL PCRA PETITION IS A DISINGENUOUS ARGUMENT AND IS WITHOUT MERIT.

On July 1, 2014, the Appellant filed a last minute "Reply to Commonwealth's Response to Appellant's Preliminary Statement of Matters Complained Of On Appeal." In this Reply, Appellant argues that the Commonwealth's recitation of the facts contained a, "significant error and significant omission." (p.1). Appellant contends that the Commonwealth improperly mischaracterized her "Motion for Extraordinary Relief" as "another amended PCRA petition." The Appellant further claims that the Commonwealth failed to acknowledge that the undersigned dealt precisely with the "ongoing" PCRA petition on March 5, 2013 when he granted the "Motion for Extraordinary Relief." The Appellant claims that these arguments prove the re-filed, amended PCRA Petition filed on August 5, 2013 was a continuation of the original PCRA

22

Petition, and therefore all of the claims therein were made in a timely manner. This claim is without merit and should be dismissed as well.

The Appellant was correct when she stated that the Commonwealth mischaracterized her "Motion for Extraordinary Relief" as "another amended PCRA Petition." However, this mistake presents the Court with no such ground to stand on to find merit in Appellant's case. This small error in the Commonwealth's Response does not weigh in the reasoning behind this Court's decision. The Court can find no such merit embodied within this claim, and it should be dismissed.

The Appellant was also correct when she asserted that the undersigned specifically addressed the "ongoing" PCRA Petition on March 5, 2013 when he granted the "Motion for Extraordinary Relief." He stated the withdrawal, "...obviously [is] without prejudice to your right to re-file, **subject to the time limitations**, in the event that Ms. Yarsunas is returned to Muncy." (N.T 3/5/13 pp. 21-23) (emphasis added). In her submission to the Court on July 1, 2014, Appellant fails to recognize that during his colloquy, Judge Nilon precisely stated that the withdrawal was subject to time limitations. There was no ambiguous, confusing language used by the Court in reminding Appellant of the timeliness of her subsequent filings.

Q. THE COURT:
All right. Now, Mr. Molineux, you have an application with regard to the PCRA Petition.

MR. MOLINEUX:
I do, at this time, Your Honor, based on your Order and the Petition for Extraordinary Relief, and receiving written confirmation that I've been authorized to do so by my client, Karen Yarsunas, I'll withdraw the Amended Petition, PCRA Petition, sir.

...

23

Q. THE COURT:

> And if you'll mark it withdrawn, and sign it, we will make it [the Amended PCRA Petition] part of the record.

MR. MOLINEUX:

> Certainly.

Q. THE COURT:

> And, obviously, that's without prejudice to your right to re-file, subject to the time limitations, in the event that Ms. Yarsunas is returned to Muncy."

(N.T 3/5/13 pp. 21-23).

Appellant and her counsel were on notice of the time limitations with regards to re-filing. See generally, Commonwealth v. Rienzi, 827 A.2d 369 (Pa. 2003) (holding where first PCRA petition was withdrawn, there was nothing left before the PCRA court that defendant could amend, making the second petition incapable of being viewed as an amended first petition). Further, there was never any discussion of a continuance in regards to the first PCRA Petition[20], nor was there an Application for Continuance submitted to the Court. To argue such a claim at this late stage is a disingenuous argument at best, and should be dismissed.

## CONCLUSION:

For all of the foregoing reasons, the court submits that the trial court's order denying PCRA relief to Appellant without a hearing should be affirmed.

BY THE COURT:

JAMES F. NILON, JR., J.

---

[20] Additionally, the second PCRA Petition is captioned "Defendant's *Pro Se* Motion for Post-Trial Relief" on the dockets and there is no mention of a continuation of a previous PCRA.